IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN R. ALLEN,<br><br>    Plaintiff,<br><br>v.<br><br>NOAH PRECISION, LLC,<br>LAUDA-NOAH, LP,<br>LAUDA-NOAH MANAGEMENT, INC.<br>and PETER M. ADAMS,<br>    Defendants. | § § § § § § § § § § §   Civil No. 4:14-cv-611 |

## MEMORANDUM OPINION AND ORDER
## REGARDING DEFENDANTS' MOTIONS TO DISMISS

Before the Court are Defendant Peter M. Adams's ("Adams" or "Defendant") Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6) (Dkt. 77) and Defendants Lauda-Noah, LP ("Lauda-Noah") and Lauda-Noah Management, Inc.'s ("LNM") (collectively the "Lauda Defendants") Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) (Dkt. 78). Plaintiff filed responses to both motions. *See* Dkts. 80 and 84 (Sealed). Plaintiff's response to Defendant Adams's motion to dismiss (Dkt. 80) also includes several sealed attachments. *See* Dkts. 81-83 (Sealed). For the reasons set forth below, both motions (Dkts. 77 and 78) should be **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff filed his state court action on August 15, 2014, in the 199th District Court for Collin County, asserting claims against Defendant Noah Precision, LLC ("Noah Precision") for breach of contract and quantum meruit. Defendant Noah Precision timely filed a notice of removal on June 11, 2014, on the basis of diversity jurisdiction (*see* Dkt. 1). On January 29, 2015, Plaintiff filed his First Amended Complaint (Dkt. 16) asserting additional claims against

1

Noah Precision for fraudulent transfer, alleging that Noah Precision transferred its assets with the intent of preventing Plaintiff from obtaining reimbursement for his alleged business expenses and from purchasing "units" in Noah Precision at an allegedly agreed price, and also naming Adams as a defendant in his individual capacity. *See id*. Plaintiff then filed a Second Amended Complaint on March 20, 2015 (*see* Dkt. 21), alleging that Lauda-Noah and LNM, as Lauda-Noah's general partner, purchased Noah Precision's assets with notice of Noah Precision's intent to hinder, delay, or defraud Plaintiff. *See* Dkt. 21. Plaintiff filed a Third Amended Complaint (*see* Dkt. 33) on May 20, 2016, a Fourth Amended Complaint on May 21, 2015 (*see* Dkt. 34), and, finally, a Fifth Amended Complaint on June 10, 2015 (*see* Dkt. 42), which is the operative complaint in this action.

According to Plaintiff, he was an employee of Noah Precision from the date of its organization in 2004 until August 2014, when Plaintiff contends he was wrongfully terminated. *See* Dkt. 42 at ¶8. Plaintiff alleges that during the course of his employment with Noah Precision he was required to "travel extensively on a national and international basis" and to purchase equipment, which he stored in his home in Collin County, Texas. *See id*. at ¶12. Plaintiff further alleges that Noah Precision agreed to reimburse him for his "reasonable and necessary business expenses." *See id*. at ¶13. Plaintiff claims he was not given any deadline for submission of his business expenses and was told to spend his time performing "income-generating" work rather than taking the time to prepare and submit his expenses, which according to Plaintiff, was an "extremely complicated and time-consuming task, involving thousands of receipts from different countries with different currencies." *See id*. at ¶14. Plaintiff contends that when he submitted approximately $89,000.00 in unpaid business expenses in August 2014, Noah Precision refused to reimburse him and then wrongfully terminated him to avoid reimbursing him. *See id*. at ¶18.

Plaintiff also contends that Noah Precision wrongfully terminated his employment in order to avoid repurchasing his units in Noah Precision at a previously agreed-upon price. *Id*.

Plaintiff's current complaint alleges claims of breach of contract and quantum meruit against Noah Precision, as well fraudulent transfer against Noah Precision, the Lauda Defendants, and Adams in his individual capacity. After Adams and the Lauda Defendants filed motions to dismiss in response to each of Plaintiff's amended complaints, the Court granted Plaintiff the opportunity to conduct limited discovery for the purpose of establishing personal jurisdiction. *See* Dkt. 72. Said jurisdictional discovery having been conducted, Defendants have now renewed their motions to dismiss, and Plaintiff has responded.

## LEGAL STANDARD

### I. Personal Jurisdiction

In determining whether it may exercise personal jurisdiction over a nonresident defendant, the court must consider "both the forum state's long-arm statute and federal due process." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993)). If a state's long-arm statute "extends to the limits of federal due process," as Texas's does, the court must only perform a due process analysis. *Id*. (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Due process allows a federal court to exercise personal jurisdiction over a nonresident defendant only if (1) the nonresident defendant has established minimum contacts by "purposely avail[ing] himself of the benefits and protections of the forum state," and (2) "the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. (citing *Wilson*, 20 F.3d at 647) (internal quotations omitted).

3

Minimum contacts may be established through either specific or general jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction exists if the defendant has had substantial, continuous, and systematic contacts with the forum state, regardless of whether those contacts are related to the cause of action. *Johnston*, 523 F.3d at 609 (citing *Helicopters Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-19 (1984)). Specific jurisdiction exists when a nonresident defendant has purposefully directed his activities at the plaintiff and the plaintiff's alleged injuries derive from those activities. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) ("Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.") (internal citations omitted); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The plaintiff bears the burden of proving that the defendant has had minimum contacts with the forum state; however, the plaintiff need only make a *prima facie* showing of such contact. *Johnston*, 523 F.3d at 609 (citing *Wilson*, 20 F.3d at 648). The court must resolve any disputed facts in favor of the plaintiff and a finding of jurisdiction. *Id*. (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion*, 895 F.2d at 217 (internal citations omitted). "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized

methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal citations omitted).

If the plaintiff successfully makes a *prima facie* showing of minimum contacts, the burden shifts to the defendant to show "that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Johnston*, 523 F.3d at 615 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citations omitted)); *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 382 (5th Cir. 2002)).

Under the fairness inquiry, the court examines: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N'Care*, 438 F.3d at 473 (citing *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir. 1996)).

## II. Failure to State a Claim

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n. 8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Id*. at 555, 557 n. 5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to have facial plausibility, a plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted).

## ANALYSIS

The Lauda Defendants argue that both Lauda-Noah and LNM are Georgia entities not subject to the personal jurisdiction of this Court and seek dismissal accordingly. *See* Dkt. 78. Defendant Adams similarly argues that he is a non-resident who is not subject to the personal jurisdiction of the Court. *See* Dkt. 77. Adams also argues that Plaintiff has pleaded no facts to support his cause of action of fraudulent transfer against him. *Id*. The Court will first take up the issue of personal jurisdiction.

## I. Personal Jurisdiction

### A. The Lauda Defendants

*General Jurisdiction*

The Lauda Defendants contend there is no basis for this Court's exercise of personal jurisdiction over them because: (1) both Lauda-Noah and LNM are domiciled in Georgia; (2) they have no employees, officers, or partners who live in Texas or have offices in Texas; (3) they are not registered to do business in Texas and do not have a registered agent for service of process in Texas; (4) they do not own or lease property in Texas; and (5) they don't pay taxes in Texas or have any bank accounts in Texas. *See* Dkts. 78 and 78-1. The Lauda Defendants assert that Lauda-Noah has only three customers in Texas,[1] and it has done work with these customers since approximately October 3, 2014, which is after the transaction upon which Plaintiff bases his claims. *Id*. They further contend that the transaction upon which Plaintiff bases his claims did not occur in Texas and is not performable in Texas, and other than this lawsuit, they have no litigation pending against them in Texas and have never initiated any legal action in Texas. *See* Dkts. 78 and 78-1.

Plaintiff contends the Court may properly exercise general personal jurisdiction over the Lauda Defendants because: (1) their purchase of the assets of Noah Precision included "Texas contracts and goodwill;" (2) they did business with Texas clients after the transfer; and (3) their employees traveled to Texas. *See* Dkts. 80 (Sealed) at 8-9 and 83-1 (Sealed) at 15, 18-19, and 21-22. The Fifth Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston*, 523 F.3d at 611. *See also In re Chinese*

---

[1] Based on the record, it appears uncontested that Noah Precision actually had four (4) Texas clients (Texas Instruments, Maxim, Spansion, and Freescale), and Lauda-Noah continues to do business with each. The record also indicates there may have been "small changes to the [Texas] customer set" after the transfer from Noah Precision to Lauda-Noah, in that some additional customers may have purchased spare parts from Lauda-Noah. *See* Dkts. 83-1 (sealed) at 19 and 83-3 (Sealed) at 2.

*Manufactured Drywall Prod. Liab. Litig.*, 767 F. Supp. 2d 649, 660 (E.D. La. 2011) (summarizing cases). "[I]n order to confer general jurisdiction a defendant must have a business presence *in* Texas." *Johnston*, 523 F.3d at 611 (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir.1999) (emphasis in original)). "It is not enough that a corporation do business *with* Texas." *Id*.

Here, the Court finds insufficient contacts to establish that the Lauda Defendants' had a "business presence *in*" Texas and, thus, are subject to the general jurisdiction of this Court. *See id*. Furthermore, a non-resident defendant's contacts with the forum are to be considered *in toto* for purposes of the general personal jurisdiction inquiry. *See generally Johnston*, 523 F.3d at 610. Plaintiff relies exclusively on *Chinese Manufactured Drywall* as support for his argument that Lauda-Noah and LNM have sufficient contacts to establish a business presence in Texas and thus general personal jurisdiction of this Court. However, the Court finds Plaintiff's reliance on *Chinese Manufactured Drywall* unpersuasive.

Plaintiff cites the *Chinese Manufactured Drywall* defendant's volume of transactions with forum residents, the percentage of its total business revenue attributable to transactions in the forum, and the fact that its employees traveled to the forum for his argument that the contacts in his case are similar to those in *Chinese Manufactured Drywall*. *See* Dkt. 80 (Sealed). However, the contacts cited by Plaintiff were not the contacts found to be determinative of general personal jurisdiction in *Chinese Manufactured Drywall*. Rather, it was the fact that the *Chinese Manufactured Drywall* defendant: (1) was licensed to sell insurance in the state; (2) had appointed the Secretary of State as its agent for service of process; (3) had routinely submitted insurance policy and endorsement forms and rate filings to the state's Department of Insurance;

and (4) had paid premium taxes in the state. *See Chinese Manufactured Drywall*, 767 F. Supp. 2d at 662.

Although finding that the *Chinese Manufactured Drywall* defendant's percentage of revenue from the forum supported general personal jurisdiction, the court noted that percentage of revenue must be "considered in the context of the defendant's other forum contacts." *See id.* at 663. In reaching its conclusion, the *Chinese Manufactured Drywall* court analyzed a number of distinguishable cases where general personal jurisdiction was found to be lacking. For example, in *Access Telecom*, the defendant derived substantial revenue from forum residents, but its business was the result of running its foreign-based telephone lines *through* the forum–and, thus, not *in* the forum, and its contacts were with U.S. companies, not forum-specific companies. *See Chinese Manufactured Drywall*, 767 F. Supp. 2d at 663 (citing *Access Telecomm*, 197 F.3d at 717–18) (emphasis added). In *Dalton v. R & W Marine*, although the defendant yielded 12.9% of its total revenues[2] from vessels chartered to its forum subsidiaries, it had no authorization to do business in the forum state and also did not do business there. *Id.* (citing *Dalton v. R & W Marine* 897 F.2d 1359 (5th Cir.1990)). Finally, the defendant in *Bearry v. Beech Aircraft* distributed $250 million of its products to dealers in the forum but was not qualified to do business in the forum, had no agent for service of process in the forum, did not insure any forum residents, and did not pay taxes in the forum. *Id.* (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987)).

The common thread in *Access Telecom*, *Dalton*, and *Beech Aircraft* is that the defendant's percentage of revenue, without other forum contacts, was insufficient to establish general personal jurisdiction. *See Chinese Manufactured Drywall*, 767 F. Supp. 2d at 663. Thus, the court's finding of general personal jurisdiction in *Chinese Manufactured Drywall* was based

---

[2] Here, Texas clients appear to represent approximately 9.6% of total revenue. *See* Dkt. 83-3 at 2.

on the defendant's revenue, *in addition to* the other more determinative contacts noted above. That is not the case here. Plaintiff has not established that the Lauda Defendants have other determinative contacts with Texas. They are not domiciled in Texas; they maintain no offices or bank accounts in Texas; they are not registered to do business in Texas, nor do they have a registered agent for service of process in Texas; they don't own or lease property in Texas; and they don't pay taxes in Texas.

Although Plaintiff cites the fact that Lauda-Noah employees traveled to Texas, a defendant's employees traveling to the forum state is "inconsequential to the general personal jurisdiction analysis." *See Chinese Manufactured Drywall*, 767 F. Supp. 2d at 660 (citing *Johnston*, 523 F.3d at 614). Accordingly, the Court finds that Plaintiff has failed to meet his burden to make a *prima facie* showing of minimum contacts as to the Lauda Defendants, and, thus, there is no basis for the exercise of general personal jurisdiction over them. *See Johnston*, 523 F.3d at 615 (internal citations omitted).

*Specific Jurisdiction*

Specific jurisdiction is a "claim-specific" inquiry. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006). A plaintiff bringing multiple claims must establish specific jurisdiction for each claim. *Id*. Plaintiff contends that Lauda-Noah and LNM are subject to specific personal jurisdiction because their "fraudulent transfer" committed outside of Texas has consequences in or affects Texas and, thus, establishes minimum contacts. *See* Dkt. 80 (Sealed) at 10. According to Plaintiff, Lauda-Noah, and LNM as its general partner, "singled out, aimed its conduct at, and targeted Plaintiff" by "accepting the assets of Noah Precision with actual intent to delay, hinder, or defraud [Plaintiff]."

In support of specific jurisdiction for his fraudulent transfer claim, Plaintiff directs the Court's attention to a 2009 Fifth Circuit decision where a non-resident transferee was found to have sufficient minimum contacts with the forum state to support jurisdiction. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400–03 (5th Cir. 2009). In *Mullins*, the Fifth Circuit upheld the district court's exercise of personal jurisdiction over defendants who had no contacts with the forum state of Texas other than their alleged involvement in a fraudulent transfer scheme upon plaintiffs, concluding that defendants had "purposefully aimed their conduct at [plaintiff] in Texas …, with the knowledge that their conduct would [] impair the rights of a single, major creditor and Texas resident under agreements that center around Texas." *Id*. at 398.

The Fifth Circuit reached this holding by interpreting the "effects" test articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under the *Calder* effects test, "an act done outside the state that has consequences or effects within the state [to] suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Mullins v. TestAmerica, Inc.*, 564 F.3d at 400 (internal citations omitted). Because the plaintiff was a Texas resident, because the defendant was "acutely aware" that its conduct would thwart the plaintiff's claim to a portion of the proceeds involved, and because the contracts governing the parties' business relationship were governed by Texas law, the Fifth Circuit held that the defendants "should reasonably have anticipated being haled into a Texas court for precipitating and directing an alleged[ly] fraudulent transfer at the expense of a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas." *Id*. at 402.

Although the Fifth Circuit expressed skepticism at notions that the *Calder* effects test establishes personal jurisdiction *whenever* the recipient of a fraudulent transfer injures a creditor, or that "personal jurisdiction exists over the recipient of a fraudulent transfer *anywhere* a complaining creditor files suit simply by virtue of the creditor's residence in that forum," the court overcame its skepticism based on evidence that the plaintiff/creditor had been targeted and singled out by the defendants and that the defendants intended to block any sale that included a distribution of assets to that specific creditor. *Id*. at 401-02 (emphasis added). Notably, *Mullins* did not hold that a categorical finding of personal jurisdiction exists when a transferee acts with an intent to hinder, delay, or defraud a creditor, nor did it find that the *Calder* effects test supplanted the minimum contacts test. *Id*. at 400. Plaintiff also relies on *Dontos v. Vendomation NZ, Ltd.*, 582 Fed. App'x 338 (5th Cir. 2014), a case that relies heavily on *Mullins*. Just as in *Mullins*, the *Dontos* plaintiff alleged specific facts regarding the transferees' purported complicity in the alleged fraudulent transfer.

The Court finds *Mullins* and *Dontos* both readily distinguishable. The finding of personal jurisdiction over the non-resident transferees in *Mullins* was based on a multitude of contacts with Texas, including the fact that the acts that thwarted the plaintiffs' right to payment were executed in Texas and the debtor-creditor relationship at issue was "centered in Texas." *Mullins*, 564 3d at 401. The Fifth Circuit in *Mullins* also paid special attention to the fact that the debtor's majority shareholder and a member of its board actually engineered the transaction underlying the plaintiff's claim in a manner that would ensure the plaintiff would not get paid. *See id*. at 401–03. In *Dontos*, the plaintiff's allegations involved layers of transactions where the transferring entities were either on the verge of receivership or bankrupt, and the court based its jurisdictional finding on the fact that the defendants allegedly fraudulently transferred assets

specifically to prevent Texas plaintiffs from collecting a pre-existing judgment. *See Dontos*, 582 Fed. App'x at at 346–47.

Here, nothing in the record demonstrates that the complained-of transfer was engineered to ensure that Plaintiff would not get paid. Defendant Adams asserts in his declaration that Noah Precision specifically set aside assets to pay Plaintiff in connection with the claims at issue in this lawsuit. *See* Dkt. 78-1. Furthermore, there is evidence in the record indicating that Noah Precision and Lauda-Noah specifically considered how to resolve the issue of Plaintiff's outstanding expenses and his investment in Noah Precision. *See* Dkt. 83-3 (Sealed) at 3. Plaintiff's claims here do not establish the sort of targeted activity described in *Mullins* and *Dontos*. Plaintiff has thus failed to establish a *prima facie* case of specific personal jurisdiction of the Lauda Defendants. Accordingly, Plaintiff has failed to establish any theory to support the Court's jurisdiction over the Lauda Defendants.

### B. Defendant Adams

Plaintiff does not attempt to argue that Defendant Adams in his individual capacity has substantial, systematic, and continuous contacts with Texas sufficient to establish general personal jurisdiction. Furthermore, such an argument would be unavailing given evidence that: (1) Adams is a resident of California; (2) does no business in Texas in his individual capacity; (3) maintains no offices or bank accounts in Texas; (4) does not maintain a registered agent for service of process in Texas (nor is he required to do so); (5) does not own any personal or real property in Texas; and (6) does not pay taxes in Texas or have any bank accounts in Texas. *See* Dkts. 77 and 77-1. Additionally, Adams contends that except for the instant lawsuit, he has no litigation pending by or against him in Texas and has never initiated legal action in Texas, and he has not individually entered into any contracts performable in whole or part in Texas. *See id*.

For similar reasons as those explained above, Defendant Adams is also not subject to this Court's specific personal jurisdiction. As noted, specific jurisdiction is a "claim-specific" inquiry. *See Seiferth*, 472 F.3d at 275. Plaintiff argues that Adams is subject to specific personal jurisdiction based on the transfer of assets from Noah Precision to Lauda-Noah and his role as "an officer and insider of Noah Precision, Lauda-Noah and Lauda-Noah Management." *See* Dkt. 80 (Sealed) at 11. As previously explained, there is nothing here to indicate that the transfer was fraudulently made to avoid paying Plaintiff for his outstanding expenses and for his investment in Noah Precision. *See* Dkts. 78-1 and 83-3 (Sealed) at 3.

Plaintiff has thus failed to establish any theory to support this Court's jurisdiction over Defendant Adams.

## II. Failure to State a Claim as to Defendant Adams

Plaintiff's operative complaint alleges only one cause of action against Adams—fraudulent transfer. Defendant Adams argues that Plaintiff's fraudulent transfer claim against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Dkt. 77 at 4. Although Plaintiff fails to cite the Texas Uniform Fraudulent Transfer Act ("TUFTA"), his pleadings indicate that he is alleging Adams violated Section 24.005(a)(1) of the Texas Business and Commerce Code.

To state a claim under this provision of TUFTA, a plaintiff must show "that (1) [he] is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *See Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 344 (5th Cir. 2014); *see also* TEX. BUS. & COMM. CODE §24.005(a)(1). A "creditor" under TUFTA is "someone who has a 'claim.'" *See Dontos*, 582 F. App'x at 344; *see also* TEX. BUS. & COMM.

CODE § 24.002. TUFTA defines "debtor" as "a person who is liable on a claim." *See* TEX. BUS. & COMM. CODE §24.002. TUFTA defines "claim" as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured." *See id*.

Defendant Adams argues that Plaintiff has failed to allege any facts to state a claim that he is a creditor with a claim against Adams as a debtor as those terms are defined under TUFTA. *See* Dkt. 77 at 5. The Court agrees. As Defendant Adams point out in his motion, nothing in Plaintiff's complaint alleges that Adams is personally liable to Plaintiff on a claim, as those terms are defined under TUFTA. Plaintiff's allegations in his live complaint only relate to money allegedly owed to him by Noah Precision. Accordingly, even taking Plaintiff's well-pleaded allegations as true, he has failed to state a claim against Defendant Adams.

## CONCLUSION

For the foregoing reasons, the Court finds that neither the Lauda Defendants nor Defendant Adams have sufficient contacts with the State of Texas to establish general or specific jurisdiction over them. The Court also finds that Plaintiff has failed to state a claim for fraudulent transfer against Defendant Adams. Accordingly, Defendant Adams' Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6) (Dkt. 77) is **GRANTED**, the Lauda Defendants' Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) is **GRANTED**, and Plaintiff's claims against said Defendants are dismissed without prejudice.

**It is SO ORDERED**.

**SIGNED this 2nd day of November, 2016.**

15
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE