# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

BRIAN R. ALLEN,                          §
                                         §
      **Plaintiff,**                 §
                                         §
v.                                       §
                                         §     **Civil No. 4:14-cv-611**
NOAH PRECISION, LLC,                     §
                                         §
      **Defendant.**                 §
                                         §
                                         §

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

This matter is before the undersigned for all pre-trial and trial matters pursuant to 28 U.S.C. § 636 and the consent of the parties (*see* Dkt. 7). Now pending is Defendant Noah Precision, LLC's ("Noah" or "Defendant") Motion for Summary Judgment (Dkt. 117). Plaintiff Brian R. Allen[1] ("Allen" or "Plaintiff") has filed a response in opposition. *See* Dkt. 127 (Sealed). Defendant's reply (Dkt. 139) objects to and moves to strike much of Plaintiff's summary judgment evidence. *See id.* As set forth below, Defendant's motion to strike (Dkt. 139) is **DENIED** as moot, and Defendant's motion for summary judgment is (Dkt. 117) is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff filed his state court action on August 15, 2014, in the 199th District Court for Collin County, asserting claims against Noah for breach of contract and *quantum meruit*. Defendant Noah timely filed a notice of removal on September 23, 2014, on the basis of

---

[1] The Court notes that Plaintiff was *pro se* from November 23, 2016, to June 20, 2017. Thus, Plaintiff's briefings related to the instant motion were filed while Plaintiff was not represented by counsel.

diversity jurisdiction (*see* Dkt. 1). On January 29, 2015, Plaintiff's Fifth Amended Complaint (the "Complaint") (Dkt. 42), the operative complaint herein, asserted an additional claim against Noah for fraudulent transfer, alleging that Noah transferred its assets with the intent of preventing Plaintiff from obtaining reimbursement for alleged business expenses and from redeeming his ownership units ( the "Units") at an allegedly agreed price. *See id.* Defendants Peter M. Adams ("Adams"), Lauda-Noah, LP ("Lauda-Noah"), and Lauda-Noah Management, Inc. ("LNM") have been dismissed from this lawsuit. *See* Dkt. 89. Thus, Noah is the only remaining Defendant.

According to Plaintiff, he was an employee of Noah from the date of its organization in 2004 until August 2014. *See* Dkt. 42 at ¶8. Plaintiff alleges that during the course of his employment with Noah, he was required to "travel extensively on a national and international basis" and to purchase equipment, which he stored in his home in Collin County, Texas. *See id.* at ¶12. Plaintiff further alleges that Noah agreed to reimburse him for his "reasonable and necessary business expenses." *See id.* at ¶13. Plaintiff claims he was not given any deadline for submission of his business expenses, and was told to spend his time performing "income-generating" work rather than taking the time to prepare and submit his expenses, which according to Plaintiff, is an "extremely complicated and time-consuming task, involving thousands of receipts from different countries with different currencies." *See id.* at ¶14. Plaintiff contends that when he submitted approximately $89,000.00, in unpaid business expenses in August 2014, Noah refused to reimburse him and then terminated him to avoid reimbursing his business expenses and to avoid redeeming his Units at a previously-agreed price. *See id.* at ¶18.

Noah asserts that during Plaintiff's ten (10) years of employment with the company, he submitted a business expense report to Noah only once, in April 2005; that Plaintiff was reimbursed for those expenses submitted in 2005; and thereafter Plaintiff never submitted another business expense report, despite repeated requests from Noah. *See* Dkt. 117 at 8-9. Noah further asserts that Plaintiff was issued a company credit card in May 2006, so that Noah could timely track and pay for Plaintiff's business-related expenses. *Id*. at 9. Yet, according to Noah, Plaintiff chose to charge most of his expenses on multiple personal credit cards and repeatedly failed to account for his expenses. *Id*. Noah implemented a formal expense reimbursement policy applicable to all employees in March 2012, which Noah alleges merely memorialized what its expectations had been prior to formally publishing the policy—that business expenses be submitted and accounted for on a monthly basis. *Id*. The policy provided that employees with business expenses prior to April 1, 2012, had ninety (90) days to submit those expenses or they would not be reimbursed. *Id*. According to Noah, Plaintiff still refused to comply with the policy despite multiple communications specifically informing Plaintiff that the Policy did indeed apply to him. *See id*.

As for Plaintiff's claim he was to receive a previously agreed price for his Units, Noah asserts there was never an agreed redemption price for Plaintiff's Units, but rather the redemption price was to be a fair market value as determined by the methodology set forth in the company's operating agreement (the "Operating Agreement"). *See* Dkt. 117 at 15.

Noah argues it is entitled to summary judgment for the following reasons:

1. Plaintiff's breach of contract claim for unreimbursed business expenses fails because he cannot prove he performed under any contract; he failed to comply with conditions precedent that would have triggered Noah's performance under any contract; he failed to follow Noah's policy regarding submission of business expenses; and he admits he does not know what his damages are, if any;

2. Plaintiff's *quantum meruit* claim fails because he cannot prove he provided services or materials to Noah for which he was not already compensated, and he admits he does not know what his damages are, if any;

3. Alternatively, even if fact issues exist as to Plaintiff' claims for business expenses, claims for expenses incurred prior to 2010 are barred by the applicable statutes of limitations;

4. Plaintiff cannot raise a genuine issue of material fact on his claim related to his Units because he failed to perform under the Operating Agreement; he cannot show Noah breached the Operating Agreement; and he admits he does not know what his damages are, if any; and

5. Plaintiff cannot establish a fraudulent transfer claim because he admits he has no evidence that Noah had the intent required by the applicable fraudulent transfer statute.

*See* Dkt. 117 at 12-23.

In response, Plaintiff maintains he was told he need not submit his expense reports because customer visits were considered a higher priority by Noah (*see* Dkt 127 at ¶¶ 7, 13), and that Noah's expense submission policies were not conducive to reporting and accounting for Plaintiff's extensive business-related foreign travel on behalf of the company (*see* Dkt 127 at ¶¶ 11-14). Plaintiff also maintains that the redemption value Noah offered for his Units was insufficient. *See id*. at 15-17.

The Court notes that Plaintiff's response raises other matters not relevant to his claims herein. For example, Plaintiff's claim that he was not paid his full salary (*see* Dkt. 127 at 6) is not an asserted claim in Plaintiff's lawsuit. *See* Dkt. 42. Plaintiff's Complaint asserts three (3) causes of action: (1) a breach of contract claim for business expenses and the redemption value of his Units; (2) a *quantum meruit* claim (alternative to his breach of contract claim) for his business expenses; and (3) a fraudulent transfer claim. *Id* at 6-9. Therefore, Plaintiff has not timely asserted a claim for salary payments, and the Court will not consider it here. The

Court will also not address any assertions by Plaintiff regarding the circumstances of his termination, as no employment-related claims have been asserted in this action.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

### III. EVIDENCE PRESENTED

Defendant has submitted the following evidence in support of its summary judgment motion:

1) Exhibit A: Transcript from April 17, 2017 deposition of Plaintiff Brian Allen with the following deposition exhibits:

    a) Exh. 3: Defendant Noah Precision LLC's Second Set of Interrogatories to Plaintiff Brian R. Allen;

    b) Exh. 4: Plaintiff's Original Petition;

    c) Exh. 5: Noah Precision LLC Employee Business Expense Report Policy;

    d) Exh. 10: Email from Brian Allen dated April 18, 2012;

e)   Exh. 11: Email from Brian Allen dated April 26, 2012;

f)   Exh. 12: Email from Pete Adams dated April 26, 2012;

g)   Exh. 13: Email from Brian Allen dated April 26, 2012;

h)   Exh. 14: Email from Brian Allen dated April 27, 2012;

i)   Exh. 15: Email from Brian Allen dated May 9, 2012;

j)   Exh. 16: Email from Brian Allen dated June 5, 2012;

k)   Exh. 17: Email from Brian Allen dated April 7, 2013;

l)   Exh. 18: Email from Vince Calvo dated February 5, 2014;

m)  Exh. 19: Email from Bruce Seifried dated February 5, 2014;

n)   Exh. 20: Email from Brian Allen dated March 11, 2014;

o)   Exh. 21: Email from Bruce Seifried dated July 15, 2014;

p)   Exh. 22: Email from Brian Allen dated July 24, 2014;

q)   Exh. 23: Email from Pete Adams dated July 24, 2014;

r)   Exh. 24: Email from Brian Allen dated July 24, 2014;

s)   Exh. 25: Email from Brian Allen dated July 27, 2014;

t)   Exh. 26: Email from Brian Allen dated July 27, 2014;

u)   Exh. 27: Email from Pete Adams dated July 28, 2014;

v)   Exh. 28: Email from Pete Adams dated July 31, 2014;

w)  Exh. 29: Email from Brian Allen dated August 15, 2014;

x)   Exh. 30: Letter from Pete Adams to Brian Allen dated August 22, 2014;

y)   Exh. 31: Redemption Agreement between Noah Precision, LLC and Brian R. Allen; and

z)   Exh. 34: Undated letter from Pete Adams to Brian Allen regarding "Unpaid Administrative Leave;"

2)  Exhibit B: Declaration of Peter M. Adams with the following exhibits:

> a) Exh. B-1: Operating Agreement for Noah Precision, LLC; and
>
> b) Exh. B-2: Exhibits to the Operating Agreement for Noah Precision, LLC:
>
>> i. Exhibit A: Names and Addresses of members; Capital Contributions, Names and Addresses of Members and Directors;
>>
>> ii. Exhibit B: Unit Certificate;
>>
>> iii. Exhibit C-1: Subscription Agreement (Member);
>>
>> iv. Exhibit C-2: Subscription Agreement (Permitted Transferee Form); and
>>
>> v. Exhibit D: Determination of Company Valuation, Unit Value, and Redemption Price;

3) Exhibit C: Plaintiff's Responses to Defendant, Noah Precision, LLC's Second Set of Interrogatories;

4) Exhibit D: Plaintiff's Supplemental Rule 26(a)(1) Disclosures; and

5) Exhibit E: Declaration of Terah Moxley.

Dkts. 117-1-117-4.

In response, Plaintiff has submitted the following evidence:

1) Exhibit A: Expense Spreadsheets for 2005-2014;

2) Exhibit B: Email from Tammy Goodson dated May 11, 2017;

3) Exhibit C: Email from Brian Allen dated January 22, 2005;

4) Exhibit D: Letter to Brian Allen from Pete Adams dated January 25, 2005;

5) Exhibit E: Letter to Brian Allen dated August 22, 2014; [2]

6) Exhibit F: Email from Brian Allen to Pete Adams dated July 24, 2014;

7) Exhibit G: Document entitled "Brian's Development Needs;"

8) Exhibit H: Document that appears to be an excerpt from an email exchange between Brian Allen and Pete Adams on or about July 28, 2014;

---

[2] Since the letter was not presented in its entirety, the sender of the letter is unknown.

9) Exhibit I: Document that appears to be an excerpt from an email exchange between Brian Allen and Pete Adams on or about April 26, 2012;

10) Exhibit J: Email from Brian Allen to Pete Adams dated May 9, 2012;

11) Exhibit K: Email from Jim Hughins to Pete Adams dated April 27, 2012;

12) Exhibit L: Document entitled "Field Service and Semiconductor Applications Engineer;"

13) Exhibit M: Email from Sheryl Hirschbein to Duane Kogler and Brian Allen dated Monday July 14, 2014;

14) Exhibit N: Email from noreply@genares.com to Brian Allen dated July 1, 2014;

15) Exhibit O: Email from Bruce Seifried dated July 15, 2014;

16) Exhibit P: Email from Brian Allen to Bruce Seifried dated March 11, 2014;

17) Exhibit Q: Email from Pete Adams to Brian Allen dated July 24, 2014;

18) Exhibit R: Unrecognizable images purported to be "4 Photos of Expense Receipts Laid Out at the Factory;"

19) Exhibit S: Email from Peter Adams to [redacted] dated Friday August 1, 2014;

20) Exhibit T: Document entitled "Timing of Events leading to termination;"

21) Exhibit U: Unrecognizable document purported to be "Table M Hollida termination;"

22) Exhibit V: Document dated September 14, 2012, memorializing a meeting of the Noah Precision Board of Directors held on August 28, 2012;

23) Exhibit W: Document dated February 3, 2011, regarding distribution of Employee Units;

24) Exhibit X: Unrecognizable document purported to be "Table 500 EE Unit grant;"

25) Exhibit Y: Document entitled "December 31, 2011 Cap Table;"

26) Exhibit Z: IRS Schedule K-1 forms for Noah Precision LLC for 2010 and 2014;

27) Exhibit AA: Document entitled "Job Responsibilities of Plaintiff - Brian R Allen;"

28) Exhibit BB: Transcripts excerpts purported to be from the deposition of Peter Adams taken on May 12, 2017;[3]

Dkt. 127-1. Although the "Table of Exhibits" in Plaintiff's response lists additional exhibits, the following exhibits listed in the Table of Exhibits do not appear in the record:

1) Deposition exhibits accompanying Exhibit BB;

2) Exhibit CC purported to be excerpts from the deposition of Witness Lamont Humphrey taken on May 11, 2017; and

3) Exhibit DD purported to be Plaintiff's supplemental Rule 26(a)(1) disclosures.

## IV.  ANALYSIS

### A.  FRAUDULENT TRANSFER

Plaintiff alleges that Noah fraudulently transferred its assets to avoid reimbursing Plaintiff for his business expenses and to avoid paying an "agreed price" for his Units. *See* Dkt.42 at 8. Although Plaintiff fails to cite the portion of the Texas Uniform Fraudulent Transfer Act ("TUFTA") under which he brings his claim, Plaintiff's pleadings indicate that he is alleging Noah violated Section 24.005(a)(1). *See* Dkt. 42 at ¶¶ 37–43. To state a claim under this provision of TUFTA, Plaintiff must show that Noah participated in the asset sale "with actual intent to hinder, delay, or defraud" him. *See* Tᴇx. Bᴜs. & Cᴏᴍᴍ. Cᴏᴅᴇ § 24.005(a)(1).11.

Here, nothing in the record demonstrates the transfer was engineered to hinder, delay, or defraud Plaintiff. In fact, the evidence demonstrates quite the opposite. As part of the asset sale, Noah specifically held back and retained $200,000.00 to address Plaintiff's claims. *See* Dkt. 118 at 2-7, Affidavit of Peter M. Adams, President of Noah from 2004 to 2014 ("Adams Decl.") at ¶16 (Sealed). This sum exceeds the amount Noah had already offered Plaintiff for

---

[3]      The Court notes the transcript lacks any identifying or authenticating information and fails to include the deposition exhibits referenced by Plaintiff. *See* Dkt. 127 at 5.

both his business expenses and the value of his Units. The record shows that when Plaintiff was terminated in August 2014, Noah offered Plaintiff $64,244.00, for expenses incurred as early as 2006 without requiring further documentation (*see* Dkt. 117-1 at 45), and $83,180.00, to redeem his Units (*see* Dkt. 117-1 at 52), a total of $147,424.00. Thus, Noah's set-aside money of $200,000.00 at the time of the asset sale—more than thirty-five percent (35%) above what Noah offered Plaintiff in August 2014—establishes that Noah specifically considered how to resolve the issue of Plaintiff's outstanding expenses and redemption of his Units upon completion of the transaction.

Plaintiff fails to make any argument or provide any evidence that the sale was contrived for the purpose of defrauding him. While Plaintiff argues that his fraudulent transfer claim has merit because $200,000.00 was not sufficient to cover his claims (*see* Dkt. 117 at 20), nothing in the record demonstrates that Plaintiff ever made a settlement demand or offered a calculation of his claimed damages. At his deposition taken on April 17, 2017— three years after initiating this lawsuit—Plaintiff still could not provide an answer when asked the amount of his claimed business expenses or the value of his Units. *See* Dkt. 117-1 at 1-84, Deposition of Brian Allen ("Allen Depo.") at 34:12–20, 126:18–22, 264:16–267:15.

Although Plaintiff makes a number of unsubstantiated assertions and conclusory allegations about Peter Adams's honesty and integrity, he offers no evidence that Noah acted fraudulently. "[U]nsubstantiated assertions are not competent summary judgment evidence." *Celotex*, 477 U.S. at 322. Viewing all evidence in the light most favorable to Plaintiff as the nonmoving party, the Court determines there is no genuine dispute of material fact. There is no evidence that Noah participated in the asset sale "with actual intent to hinder, delay, or defraud" Plaintiff. TEX. BUS. & COMM. CODE § 24.005(a)(1).11. Therefore, because Plaintiff

cannot establish an essential element of his TUFTA claim, the Court grants summary judgment on Plaintiff's fraudulent transfer claim as a matter of law.

## B. REDEMPTION VALUE OF PLAINTIFF'S UNITS

Plaintiff's Complaint alleges Noah breached the Operating Agreement when it failed to repurchase Plaintiff's Units for a "certain redemption price" and failed to provide Plaintiff with information regarding the value of Plaintiff's Units. *See* Dkt. 42 at 6-7. Defendant argues that Plaintiff cannot show Noah breached the Operating Agreement; nor can he establish any damages associated with the alleged breach.

Although the Operating Agreement is "set forth . . . under the laws of the State of Delaware," (*see* Dkt. 118 at 13), Delaware law mirrors Texas law regarding the essential elements Plaintiff must prove on his breach of contract claim. *See Revolution Retail Sys., LLC v. Sentinel Techs., Inc.*, 2015 WL 6611601, at *9 (Del. Ch. 2015). The Court may look to the law of any of the states whose law would potentially apply to aid in the disposition of this case. *See Brock v. Baskin Robbins, USA*, 2003 WL 21309428, at *1 (E.D. Tex. 2003). Because Texas law governs Plaintiff's breach of contract claim as to his unreimbursed expenses (discussed below), and no substantive difference exists between Delaware and Texas law regarding the essential elements of Plaintiff's breach of contract claim, the Court concludes that it can analyze this claim under Texas law. *See Id.* at n 7.

Under Texas law, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

The Operating Agreement dictates the events that trigger Noah's right to repurchase ownership units issued to employees, and controls the manner in which such repurchase occurs, including the methodology for determining a company valuation and the redemption price of units. *See* Dkt. 118 at 45-48, 65 (Sealed). Noah terminated Plaintiff's employment on August 15, 2014, constituting a "Termination Event" under the Operating Agreement. *See* Dkt. 118 at ¶11 (Adams Decl.) (Sealed); Dkt. 118 at 45 (Operating Agreement) (Sealed). There is no dispute Plaintiff was the owner of 75,000 Common Units, 26,000 Series A Working Units, and 15,000 Series B Working Units. In accordance with the terms of the Operating Agreement, Noah determined the value of Plaintiff's Units as follows: $1.18 per Common Unit ($88,500.00), $0.18 per Series A Working Unit ($4,690.00), and $0.00 for Series B Working Units, for a total of $93,180.00. *See* Dkt. 118 at ¶11 (Adams Decl.) (Sealed).

The Operating Agreement provided Plaintiff with two options for responding to the value as determined by Noah: (1) sell his Units to Noah based on this value; or (2) provide notice to Noah's Board of Directors within fifteen (15) days if he believed the actual value of his Units exceeded the determined value by more than ten percent (10%) (the "Appraisal Option"). *See* Dkt. 118 at 5, Adams Decl. at ¶¶12–13 (Sealed); Dkt. 118 at 45, Operating Agreement (Sealed) (stating Member "shall sell" his Interests once Company exercises right to repurchase as a consequence of a Termination Event). The Appraisal Option provided a mechanism for dealing with a dispute over valuation. Dkt. 118 at 66, Operating Agreement (Sealed). Under the Appraisal Option, Plaintiff was required to provide notice of a request for appraisal within fifteen (15) days of the valuation determined by the Board of Directors. *See id*.

Defendant alleges Plaintiff did neither. According to the Declaration of Peter Adams, "[t]he unit values were communicated to [Plaintiff] in August 2014 in the form of a redemption agreement" and although "the Operating Agreement gave [Plaintiff] the right to request an appraisal if he disputed this valuation, he never did so," and "[h]e did not sell his [U]nits back to the Company." *See* Dkt. 118 at 5, Adams Decl. at ¶13 (Sealed). In his deposition, Plaintiff concedes that although he sent an email disagreeing with the valuation, he did not request an appraisal to determine the value of his Units. Dkt. 117-1 at 155, Allen Depo. at 260:10–262:5.

Plaintiff also fails to offer any argument or evidence to refute Defendant's position that it was Plaintiff—not Defendant—who breached the Operating Agreement. A breach occurs when a party fails or refuses to do something he has promised to do. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App. 2003); *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). A party to a contract may not set up his own breach to relieve himself of his contractual obligations. *Dorsett*, 106 S.W.3d at 220 (citing *Presley v. Cooper*, 278 S.W.2d 237, 241 (Tex. Civ. App.—Amarillo), rev'd on other grounds, 284 S.W.2d 138, 155 Tex. 168 (Tex. 1955)).

Here, Plaintiff had a contractual obligation under the terms of the Operating Agreement to request an appraisal in the event he disagreed with the valuation established by Noah. Not only did Plaintiff not request an appraisal, he has provided no evidence of a competing or different valuation. *See* Dkt. 118 at 5, Adams Decl. at ¶ 15 (Sealed); *see also* Dkt. 117-1 at 1-84, Allen Depo. at 264:16–267:15. Although Plaintiff's response makes

conclusory allegations and unsubstantiated assertions about what he believes the redemption price should have been and how it should have been determined, he offers no legal argument or evidence to establish that Defendant breached the terms of the Operating Agreement as it relates to the valuation of Plaintiff's Units.

Based on the foregoing, the Court concludes that Defendant has carried its summary judgment burden as the moving party. The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Plaintiff has failed to counter Defendant's strong summary judgment evidence and fails to raise any genuine issue of fact with regard to his claim that Noah breached the Operating Agreement. Furthermore, Plaintiff has provided no competent evidence of any damages he suffered as a result of the alleged breach. *See Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 4410370, at *15–16 (N.D. Tex. 2007) (finding that summary judgment should be granted where the plaintiff cannot establish damages or has no competent evidence of damages); *see also Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 396-97 (Tex. App.—El Paso 1998, pet. denied) ("In order to recover compensatory damages, the plaintiff must establish that he suffered some pecuniary loss as a result of the breach of the contract."). Because Plaintiff has failed to prove two essential elements of his claim that Noah breached the Operating Agreement as it relates to the redemption of Plaintiff's Units, the Court finds that summary judgment is proper on this claim.

### C. BUSINESS EXPENSES

Plaintiff alleges that Noah and Plaintiff entered into a contract whereby Noah agreed to reimburse Plaintiff for his business expenses and that Noah breached said contract by not

reimbursing Plaintiff. *See* Dkt. 42 at 6-7.  In the alternative, Plaintiff asserts he is entitled to payment for such business expenseS under the quasi-contract theory of *quantum meruit*. *See id*. at 7-8.

Defendant argues that both claims should fail because any promise by Noah to reimburse Plaintiff for business expenses was predicated on Plaintiff providing appropriate documentation so that Noah could determine whether the expenses were reasonable and necessary. *See* Dkt. 117 at 22. Defendant also argues that to the extent a contract existed, Plaintiff cannot establish that he performed under it or that he satisfied the condition precedent of actually submitting his expenses to Noah for reimbursement—and consequently, Plaintiff's claim fails as a matter of law. *See* Dkt. 117 at 20.

Defendant further argues that even if a fact issue exists regarding Plaintiff's breach of contract or *quantum meruit* claims, applicable statutes of limitations bar Plaintiff from recovering any expenses incurred prior to 2010, as a matter of law.

### 1. <u>Breach of Contract</u>

To prevail on his breach of contract claim, Plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by Plaintiff; (3) breach of the contract by Defendant; and (4) damages sustained by Plaintiff as a result of Defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). As to the first element, an express contract arises when its terms are stated by the parties. *Harrison v. Williams Dental Group, P.C.*, 140 S.W.3d 912, 916 (Tex. App.—Dallas 2004). An implied contract can arise from the acts and conduct of the parties. *Id*. (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). An

implied contract exists when the facts and circumstances surrounding the parties' relationship, including their conduct and course of dealing, imply a mutual intention to contract. *Id.* Questions of contract formation must be resolved on objective standards, looking to the "meaning reasonably conveyed by the parties' actions and words, rather than their uncommunicated subjective intentions." *Fuqua v. Fuqua*, 750 S.W. 2d 238, 245 (Tex. App.—Dallas 1988).

Here, it is undisputed that prior to the implementation of the Employee Expense Report Policy (the "Policy"), effective April 1, 2012 (*see* Dkt. 117-1 at 98-102), Noah had no written document that addressed the reimbursement of business expenses. Dkt. 118 at 2, Adams Decl. at ¶ 7. According to the Declaration of Peter Adams, "the written policy memorialized what the Company's expectations has been prior to publishing it—that business expenses be submitted and accounted for on a monthly basis and not be more than 90 days old." *Id.*

The Policy provides, among other things, that employees would be reimbursed for business expenses only "upon submission of a proper expense report," which had to be approved by a supervisor. Dkt. 117-1 at 98-102. The Policy states the following with respect to expense report documentation requirements:

> A daily record of expenses is required. All items listed on the expense report should show date, business location (city and state) and business purpose. Receipts must be attached for individual meals exceeding $25, entertainment, lodging, auto rental, cab fare, and commercial travel. . . . Only original receipts or scanned copies of original receipts will be accepted for expense report reimbursement.

*Id.* at 98.

It is uncontested that Plaintiff has not been reimbursed for several years' worth of business expenses. *See* Dkt. 117-1 at 105, 125, 137, and 45. However, it is also uncontested that Plaintiff—with the exception of one instance in April 2005—failed to submit any documentation for his claimed business expenses. *See id.*; *see also* Dkt. 117-1 at 46, Allen Depo. at 180:4-17. Noah argues that both before and after the implementation of the Policy, Noah's obligation to reimburse Plaintiff for business expenses could only be triggered by Plaintiff actually submitting those expenses for reimbursement; until Noah received an expense reimbursement request from Plaintiff, it had no way of knowing the amount Plaintiff claimed he was owed. *See* Dkt. 117 at 22.

Although Plaintiff concedes he had a duty to present his business expenses to Noah in order to receive reimbursement (*see* Dkt. 117-1 at 18, Allen Depo. at 67:19–68:12; Dkt. 117-1 at 39, Allen Depo. at 149:23–150:1), he argues that not submitting expenses was not "contrary to normal Noah practices" (Dkt. 127 at 7). Plaintiff argues he is entitled to reimbursement whether or not he submitted documentation because Noah had no written policy or requirements for expense reporting prior to April 2012, and there was no previous practice of submitting expenses within ninety (90) days. *Id.* at 7-8. Plaintiff also asserts that because he traveled extensively on behalf of the company, the task of submitting expenses was burdensome and time-consuming. *Id.* Plaintiff's Complaint alleges Noah failed to provide Plaintiff with the necessary resources to prepare and submit his expenses and that he was directed to prioritize client servicing over the preparation and submission of expenses. *See* Dkt. 42 at ¶¶ 14-15. Plaintiff also argues that specific remedies he proposed to reduce the need for expense reporting were rejected by Noah. *See* Dkt. 127 at 6-7.

Noah counters that it had for a number of years tried to account for Plaintiff's business expenses. In 2005, Noah was required to accrue an unrecognized liability because of Plaintiff's failure to account for his unreimbursed expenses, which at that time Plaintiff estimated to be approximately $25,000.00. *See* Dkt. 118 at 3, Adams Decl. at ¶ 6 (Sealed). Noah was also facing the possibility of having to restate its federal and state income tax returns because the company's income was overstated due to the outstanding liability of Plaintiff's expenses. *See* Dkt. 117-1 at 105, 108. Based on the record before the Court, it appears that Noah instituted the Policy in an effort to compel Plaintiff to submit his expenses. *See* Dkt. 117-1 at 108. However, as Plaintiff points out, there is a notable lack of evidence to show that Noah communicated its expense reporting requirements to Plaintiff prior to the implementation of the Policy.

The record appears to indicate that Noah's communications with Plaintiff about expense reporting practices were largely contemporaneous with the implementation of the Policy in April 2012. For example, on March 22, 2014, Vince Calvo, Noah's Controller, announced the Policy in an email. *See* Dkt. 117-1 at 119. Plaintiff was a recipient of that email, which states:

> The policy is effective April 1, 2012. For those who have expenses prior to April 1, 2012, you have 90 days from April 1 to turn in your expenses that date prior to April 1, 2012. Per the policy, after June 30, 2012, any expenses prior to April 1, 2012 will NOT be reimbursed.

*Id*. (emphasis in original).

Plaintiff argues he did not believe the Policy applied to him and he did not agree to it. See Dkt. 127 at 11. Plaintiff called the requirement to submit pre-April 2012 expenses by June 30, 2012, "unreasonable" and a "seemingly arbitrary deadline." *See* Dkt. 117-1 at 155.

Plaintiff stated he would rather leave the company than to follow "such harsh expense policies." *See* Dkt. 127 at 10.

In an email dated March 11, 2012, Bruce Seifried advised Plaintiff that Noah had agreed to accept copies of Plaintiff's expense receipts after April 1, 2012, without the need to complete the forms, to which Plaintiff replied: "That's very doable." *See* Dkt. 117-1 at 121. On May 3, 2012, Plaintiff and Adams appeared to reach an agreement whereby Plaintiff would set aside time during the week of May 6, 2012, to scan his expense receipts and submit them electronically. *See* Dkt. 117-1 at 113. However, the record indicates that as of July 15, 2014, Plaintiff still had not submitted his expense receipts. *See* Dkt. 117-1 at 122-23. Plaintiff was advised to bring his receipts to Vince Calvo on an upcoming trip to Washington (apparently on July 24, 2014). *Id*. Plaintiff was warned: "Do not board your flight to WA if you do not have your expense receipts with you." *Id*.

Apparently, Plaintiff's meeting with Calvo did not go well, and Plaintiff was placed on "administrative leave" beginning July 28, 2014. *See* Dkts. 127 at 13; 117-1 at 137-43. While on administrative leave, Plaintiff began copying and emailing his receipts. *See* Dkt. 117-1 at 136. Noah even provided Plaintiff with a scanner to facilitate submission of his receipts. *See* Dkt. 117-1 at 144. When Plaintiff was terminated effective August 15, 2014, Noah proposed to settle up Plaintiff's unreimbursed business expenses by treating Plaintiff's submitted credit card receipts totaling $64,244.00 "as reimbursable claims without requiring further documentation of the business nature . . . or the business activities to which the expenses relate." *See* Dkt. 117-1 at 145. Noah also offered to consider any additional requests for reimbursement by "requir[ing only a legible receipt and your affirmation that the receipts represent legitimate business expenses." Thus, the evidence indicates that Noah and Plaintiff

were working together to document Plaintiff's unreimbursed expenses, and there is no evidence to support Plaintiff's claim that Noah did not intend to reimburse his expenses (*see* Dkt. 127 at 13).

Defendant argues that whether Plaintiff's obligation to submit his expenses for reimbursement is viewed as a condition precedent[4] under the contract, or merely as the method by which Plaintiff achieved performance under the contract, Plaintiff's failure to submit expenses defeats his breach of contract claim. However, the Court finds Plaintiff has sufficiently raised a fact issue regarding the existence of a contract—let alone whether such a contract included a condition precedent and whether such a condition precedent had been met. The mere fact that Plaintiff was allowed to incur several years' worth of expenses, most of which were incurred prior to the implementation of the Policy, calls into the question the intent of the parties about the existence of any condition precedent. *See Fuqua*, 750 S.W. 2d at 245; *see also Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) ("In order to determine whether a condition precedent exists, the intention of the parties must be ascertained.") (internal citations omitted).

Although Defendant argues Plaintiff's breach of contract claim fails because Plaintiff has failed to present any evidence of his alleged damages, the Court declines to grant summary judgment on this ground. Plaintiff's Complaint alleges his damages are at least $89,000.00. *See* Dkt. 42 at ¶ 18. Plaintiff's Supplemental Rule 26(a)(1) Disclosures assert the amount is at least $131,400.00. *See* Dkt. 117-3 at 5. An exhibit included with Plaintiff's

---

[4]     "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). When a promise is subject to a condition precedent, there can be no breach of contract until such condition or contingency occurs. *See Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*, 83 F. Supp. 3d 707, 728 (E.D. Tex. 2015) (noting that a party's failure to perform under a contract is not a breach "if a condition precedent to its performance has not occurred").

response to Defendant's motion for summary judgment (*see* Dkt. 127-1)[5] alleges he is owed $117,657.91, for expenses from 2005 to 2014. Furthermore, Defendant acknowledges Plaintiff submitted expense receipts totaling $64,244.00, which it was willing to pay as consideration for the Separation Agreement. *See* Dkt. 118 at 4-5, Adams Decl. at ¶ 9 (Sealed). Defendant's contention that it disputes the validity of that amount notwithstanding, the evidence clearly establishes that Plaintiff has damages, and he is entitled to present evidence to a finder of fact regarding the amount of those damages.

Because Plaintiff has sufficiently raised a fact issue concerning his breach of contract claim for unreimbursed expenses, that claim shall proceed to trial.

### 2. **Quantum Meruit**

Plaintiff argues, in the alternative, that he is entitled to receive payment for his expenses under a *quantum meruit* theory. *Quantum meruit* is an equitable remedy which does not arise out of a contract, but is independent of it. *Colbert v. Dallas Joint Stock Land Bank*, 102 S.W.2d 1031, 1034 (1937). Generally, a party may recover under *quantum meruit* only when there is no express contract covering the furnished services or materials. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex.1988). "Under Texas law, one may recover under an equitable or *quantum meruit* theory only in the absence of an express contract covering the services or materials furnished." *Malone v. Ariba, Inc.*, 99 F. App'x 545, 553 (5th Cir.2004) (internal quotations omitted) (citing *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 401 (Tex. App.—Houston [14th Dist] 1999, no pet.); *Vortt Exploration Co., Inc., v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990); *Hebert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 872 (Tex. App.—Houston [1st Dist.] 1995, no writ)).

---

[5]     Although Defendant has objected to Plaintiff's exhibit for lack of authentication (*see* Dkt. 139), Plaintiff is entitled to an opportunity to bring admissible evidence at trial to prove his damages.

Noah argues Plaintiff cannot use the theory of *quantum meruit* to recover compensation for services he performed through his job because Plaintiff has been paid all the salary he is owed. *See* Dkt. 117 at 24. (citing *Kern v. GE Capital Info. Tech. Solutions*, 2003 WL 22433817, at *7 (N.D. Tex. 2003) (internal citations omitted)). Noah also argues that because there is no authority holding that incurring expenses by itself qualifies as the "valuable services rendered or materials furnished" necessary to support recovery under *quantum meruit*, Plaintiff's claim should fail. *Id.* The Court disagrees. Because the evidence overwhelmingly establishes that Plaintiff traveled extensively on behalf of Noah and incurred out-of-pocket expenses for which he has not been reimbursed, the Court cannot conclude that Plaintiff is not entitled to reimbursement simply because Noah paid him a salary. Such a conclusion would be completely counter to the purpose of this equitable remedy and would allow Noah to be unjustly enriched as a result.

Defendant also argues that Plaintiff's *quantum meruit* claim fails because he has failed to present any evidence of his alleged damages. For the same reason explained above, the Court declines to grant summary judgment on this ground.

Based on the foregoing, the Court concludes Defendant is not entitled to summary judgment regarding reimbursement of Plaintiff's business expenses. Because Plaintiff has raised a genuine issue of material fact as to his claim, in the alternative, under *quantum meruit*, for reimbursement of his expenses, that claim shall also proceed to trial.

### 3. <u>Statute of Limitations</u>

Finally, Defendant argues Plaintiff's breach of contract claim and his *quantum meruit* claim are both governed by a four-year statute of limitations. *See* Dkt. 117 at 25 (citing Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A

party asserting a breach of contract claim must sue not later than four years after the day the claim accrues."); *Quigley v. Bennett*, 256 S.W.3d 356, 361 (Tex. App.—San Antonio 2008, no pet.) ("[T]he statute of limitations for a *quantum meruit* claim is four years.")). Thus, Defendant argues the applicable statutes of limitations bar Plaintiff from recovering any expenses allegedly incurred prior to 2010. *See* Dkt. 117 at 25.

Because the issue of when Plaintiff's claim for business expenses accrued for purposes of these statutes of limitations is a fact issue, the Court concludes that the issue should be left to the jury and declines to grant summary judgment on this ground.

### D. EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

Defendant objects to factual assertions contained in Plaintiff's response, as well as to a number of Plaintiff's exhibits. *See* Dkt. 139. "Although a party's briefs should point the court to competent summary judgment evidence—such as affidavits, depositions or interrogatory responses contained in the party's appendi—in order to support the factual assertions contained in the party's briefs and pleadings, the briefs themselves . . . are not evidence," *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 723 (N.D. Tex. 2006). Accordingly, the Court will consider all the evidence presented to determine whether there is a fact issue and will not consider statements in either Defendant's motion or Plaintiff's response that are unsupported by competent summary judgment evidence.

Regarding Defendant's objections to Plaintiff's evidence, the Court agrees that many of Plaintiff's exhibits are inadmissible in their current state. However, because the objected-to exhibits were not considered by the Court for purposes of this ruling, and because some of the evidentiary problems in Plaintiff's exhibits can be cured, Defendant's motion to strike (Dkt. 139) is **DENIED** as moot.

## V.   CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment (Dkt. 117) is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** as to Plaintiff's fraudulent transfer claim and his breach of contract claim related to the redemption of his Units, and **DENIED** as to Plaintiff's breach of contract and *quantum meruit* claims for business expenses. Those claims shall proceed to trial. As explained above, Defendant's motion to strike is **DENIED** as moot.

**It is SO ORDERED**.

**SIGNED this 5th day of July, 2017.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE